UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES KEVIN PITTS,<br><br>    Petitioner,<br><br>    v.<br><br>JIM MACDONALD,<br><br>    Respondent. | Case No. C08-5386RJB-KLS<br><br>ORDER REGARDING FAILURE<br>TO EXHAUST AND FILING OF<br>AMENDED PETITION |

This matter is before the Court on his petition for writ of *habeas corpus* filed with this Court pursuant to 28 U.S.C. § 2254. (Dkt. #1). Respondent has answered the petition and filed the relevant state court records. The Court, having reviewed petitioner's petition, respondent's answer and the balance of the record, hereby finds and ORDERS:

The exhaustion of state court remedies is a prerequisite to the granting of a petition for writ of *habeas corpus*. 28 U.S.C. § 2254(b)(1). If exhaustion is to be waived, it must be waived explicitly by respondent. 28 U.S.C. § 2254(b)(3). A waiver of exhaustion thus may not be implied or inferred. A petition can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). Full and fair presentation of claims to the state court requires "full factual development" of the claims in that forum. Kenney v.

Tamayo-Reyes, 504 U.S. 1, 8 (1992).

It is not enough that all of the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made. Duncan v. Henry, 513 U.S. 364, 366 (1995) (citing Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982)). A federal claim is "fairly and fully" presented to the state courts if the claim is presented "(1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." Insyxiengmay v. Morgan, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted). The petitioner "must alert the state courts to the fact that he is asserting a federal claim in order to fairly and fully present the legal basis of the claim." Id.

The claim must be fairly presented in "each appropriate state court," that is, at each level of state review, so as to alert the state "to the federal nature of the claim," and to give it the "opportunity to pass upon and correct" alleged violations of the petitioner's federal rights. Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations and internal quotation marks omitted); see also Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992). The federal basis of the claim, furthermore, must be made "explicit" in the state appeal or petition, "either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law." Insyxiengmay, 403 F.3d at 668; Baldwin, 541 U.S. at 33.

Petitioner was found guilty of the crime of murder in the first degree by jury verdict in the Pierce County Superior Court on April 22, 2005. Respondent's Submission of Relevant State Court Record ("Record"), Exhibit 1, p. 1 (Dkt. #15). He was sentenced to a total of 240 months in prison. Id. at p. 4. The Washington State Court of Appeals, Division II, summarized the facts of petitioner's case relevant to this proceeding as follows:

> Pitts served as a staff sergeant in the Army's 864th Engineers Battalion. He served in Iraq from March 2003 until February 2004. During that time he began an adulterous affair with a soldier in his squad, Jackie Besio. The relationship continued when they returned home.
> On the Friday before Easter, Pitts spent the night with Besio at her apartment. The next day they drove to Seattle with Besio's daughter and Pitts's son, J[1]. All four spent the night at a motel in Sea-Tac. The next morning Tara called Besio's cellular telephone and asked Pitts to bring J home. After taking J home, Besio and Pitts returned to the motel.
> Tara called again that night to tell Pitts that she had found love letters from

---

[1] The copy of the court of appeals' decision received by the Court as part of the Record has all but the first initial of the name of petitioner's son redacted.

Besio in his car and had given them to his military supervisors. Worried about the effect an adultery investigation could have on his remaining time in the army, Pitts flew home to Ohio without leave. He also stated that he went to Ohio rather than kill Tara, because she was trying to "burn" him. He called Besio six or seven times while he was in Ohio. When Tara tried to reach him in Ohio, he referred to her calls as "[h]ounding me constantly, constantly, constantly." His brother also overheard Pitts tell Tara on the phone that he should kill her for reporting his affair to the military.

After four or five days, Pitts came to believe that he could work out his differences with his wife and he flew home. The first few days together they were happy, but soon Tara began acting smug and they argued about the affair. That night, a neighbor heard Pitts yelling angrily at Tara and Tara crying.

When Pitts woke up on April 21, 2004, Tara was already up. He asked her why J did not kiss him that morning when he left for school. Tara kept asking him about his affair with Besio. She told Pitts that she could not forgive him or trust him. Pitts decided to take a bath and relax. Tara followed him into the bathroom and continued to talk about the situation until Pitts proposed they have sex. She agreed and they had sex in the bathroom. Then he grabbed her head and pushed it into the bathtub, holding it under water until she stopped kicking.

Pitts took Tara out of the bathtub and put her in the bed. He unsuccessfully tried to revive her. He went upstairs to arrange for a neighbor to intercept J on his way home from school. Pitts also saw J at school and gave him candy, telling him that he would be going away for a few days. At some point, Pitts called Besio from his apartment and asked her to come by for one last kiss.

Pitts then left the apartment and went to a convenience store to buy an 18-pack of beer. He drove to the Fort Lewis bowling alley and drank 13 bottles of beer while sitting in the car. Inside the bowling alley he bought a pitcher of beer and drank about half of it.

Around three in the afternoon, Pitts called First Sergeant Mario Powers from the bowling alley and confessed to killing his wife, saying that he intended to turn himself in to the military police. Several agents from the Army's criminal investigations division (CID) arrested Pitts at the bowling alley. The CID agents did not give him _Miranda_[2] warnings. They transported Pitts to the CID office, where they asked him general background questions and then transferred him to the Lakewood precinct of the Pierce County Sheriff's Department about an hour later.

While in the CID office, one of the agents smelled alcohol on Pitts. During his contact with the CID agents, Pitts remained calm and coherent, not appearing to be under the influence of alcohol. He did not stumble while he walked or slur his words. Powers also told a police officer that Pitts sounded sober when he called.

When Pitts arrived at the Lakewood precinct, Detectives John Jimenez and Richard Hall took him to an interview room and read him his _Miranda_ warnings. Pitts initialed and signed an advisement of rights form and agreed to answer questions. The detectives interviewed Pitts for almost three hours, and Pitts told them about the affair with Besio, the events leading up to the killing, and the killing itself. After the initial interview, Pitts agreed to give a taped statement. The interview concluded around 8:30 p.m.

Jimenez and Hall testified that throughout the interview, Pitts did not appear to be under the influence of alcohol because he did not smell of intoxicants, did not have bloodshot or watery eyes, did not slur his words, and remained coherent and coordinated. Based on Pitts's statements about how much alcohol he had consumed that day, Hall suggested that they test Pitts's blood alcohol level. The results revealed Pitts's blood alcohol level was .13 between 9 and 10 p.m., more than four hours after the interview began.

The State charged Pitts with first degree murder. He moved to exclude his

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

> statements to Hall and Jimenez on the grounds that he was too intoxicated to voluntarily waive his *Miranda* rights. Finding that Pitts made a knowing, voluntary, and intelligent waiver of his *Miranda* rights, the trial court ruled that his statements were admissible.
>
> Early in the trial proceedings, the trial court informed the parties that the security officers would no longer transport in-custody defendants in public hallways without restraints. As a result, Pitts would be handcuffed until he was physically in the courtroom. The trial court stated that the judicial assistant would verify that the jurors were in the jury room while Pitts was being transported. Nevertheless, when the prospective jurors were asked to leave the room during voir dire, one of the jurors speculated aloud that it was because they could not see the defendant being brought in in handcuffs. Pitts moved to strike the entire venire, and the trial court denied the motion.
>
> After trial testimony commenced, a corrections officer misunderstood where the jurors would be during a recess. As a result, when he escorted Pitts back to the courtroom from the restroom, some of the jurors saw Pitts in handcuffs. Pitts moved for a mistrial and the trial court denied the motion. Although both the State and the trial court suggested giving a curative instruction to the jury, Pitts refused.

Id., Exhibit 2, pp. 2-4 (internal citations omitted).

Petitioner appealed his conviction to the Washington State Court of Appeals, Division II, which affirmed the conviction. Id., Exhibits 2-3. The court of appeals also issued an order amending its original decision affirming his conviction, and denying petitioner's motion for reconsideration of that decision. Id., Exhibits 5-6. His petition for review of the court of appeals' decision was denied by the Washington State Supreme Court as well. Id., Exhibits 7-8. The court of appeals issued its mandate on February 25, 2008. Id., Exhibit 9. It appears petitioner did not file any state personal restraint petitions or seek any additional collateral relief from his conviction or sentence in state court. See (Dkt. #1, p. 4).[3] In the federal *habeas corpus* petition he filed with this Court, petitioner challenges the legality of his conviction based on the following grounds for relief:

1. Were the Petitioner[']s, constitutional rights to a Fair and Impartial jury trial violated by the viewing of the Petitioner in handcuffs and knowledge of Mr. Pitts being lead to and from Jail to the Court House in handcuffs escorted by Correctional officers, especially when Mr. Pitts[']s defense was diminished capacity which is fragile against the presumption of innocence?

2. Did the Military Criminal Investigation Department, and the State Police violate Mr. Pitts['] Due Process of Law, and Miranda rights, when illegally obtaining a Confession while Mr. Pitts was out of his senses?[4]

---

[3] While this page is numbered "4" at the top thereof, this is actually the third page of the petition.

[4] In the argument section of his memorandum of law, petitioner set forth expanded versions of his first two stated grounds:

**ISSUE ONE**

ORDER
Page - 4

3. Did the above errors when combined together, result in cumulative error, violating Mr. Pitts['s] 5th, 6th, and 14th Amendments to Due Process, and Fair Trial?

(Dkt. #1-3, Petitioner's Memorandum of Law, p. 9).

As indicated above, petitioner claims in his second ground for federal *habeas corpus* relief that Sergeant Powers and the CID illegally obtained from him – and then turned over to local law enforcement authorities – his confession to killing his wife, by not first informing him of his Miranda rights prior to having him placed in custody, and by asking him his name, rank and other questions seeking substantially similar information. It appears, however, that petitioner has failed to exhaust his state court remedies in regard to these claims. In the appellate brief he submitted to the court of appeals, petitioner claimed the trial court abused its discretion in denying his motion to suppress a confession he gave. Record, Exhibit 3, p. 30. The particular issue petitioner raised in petitioner's appellate brief, however, was that the trial court based its decision to admit his confession to the local police "on untenable grounds since there was not substantial evidence in the record for the trial court to have found that" his "confession was voluntary by a preponderance of the evidence." Id. at pp. 30-34.

Nowhere in that appellate brief, though, did petitioner raise any issue of his Miranda rights being

---

**THE STATE MISTATED [sic] THE FACTS CLAIMING MR. PITTS WAS ONLY SEEN BRIEFLY IN RESTRAINTS SO NO PREJUDICE CAN BE SHOWN[,] BUT THE RECORD SHOWS THAT THE JUDGE TRIGGERED THIS ERROR WITH PREJUDICIAL COMMENTS IN FRONT OF THE JURY[.] A JUROR THEN IN VOIR DIRE STARTED SPEAKING OF WHY MR. PITTS WAS BEING RESTRAINED [,]AND THE JURY LATER SAW THE ONLY MAN IN A MILITARY UNIFORM[,] MR. PITTS[,] RESTRAINED BEING ESCORTED BY CORRECTIONS OFFICERS[.] 25% OF THE JURY OBSERVED MR. PITTS IN RESTRAINTS MORE THEN [sic] ONCE[.] THIS VIOLATED MR. PITTS 5th, 6th, and 14th AMENDMENT RIGHTS TO DUE PROCESS AND RIGHTS TO A FAIR AND UNPARTIAL [sic] JURY TRIAL[.] THE STATE APPELLATE COURT HAS HELD A CONTRARY OPINION TO U.S. SUPREME COURT PRECEDENT AND UNRESOABLY [sic] APPLIED THE FACTS TO THE CORRECT LEGAL PRECEDENT.**

. . .

**ISSUE TWO**

**FAILURE TO SUPRESS THE ILLEGALLY OBTAITNED [sic] CONFESSION TO Sgt. POWERS AND THE CONFESSION TO THE LAKEWOOD POLICE OBTAINED THROUGH ILL TACTICS WHILE THE PETITIONER WAS BLACKING OUT FROM BLOOD ALCOHOL LEVEL OF .21[,] NOT ABLE TO MAKE VOLUNTARY DECISIONS[,] VIOLATED THE PETITOINER[']S 5th, 6th, AND 14th AMENDMENT RIGHTS TO DUE PROCESS OF LAW AND TO INTELLIGENTLY WAIVE HIS MIRANDA RIGHTS.**

(Dkt. #1-3, pp. 13 and 19) (emphasis in original).

ORDER
Page - 5

violated by Sergeant Powers or the CID. Nor did petitioner present this issue to the state's highest court, the Washington State Supreme Court on direct appeal. In addition, no such issue was raised in a collateral attack on petitioner's conviction or sentence, given, as noted above, that the record fails to show he filed any personal restraint petition or similar form of collateral attack. As such, it seems petitioner has failed to exhaust his state remedies with respect thereto.

When a petitioner has defaulted on his claims in state court, principles of federalism, comity, and the orderly administration of criminal justice require that federal courts forego the exercise of their *habeas corpus* power. Francis v. Henderson, 425 U.S. 536, 538-39 (1976). Rules that promote prompt resolution of all constitutional claims at the appropriate state court proceeding must be respected by a federal *habeas* court. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). Thus, federal courts "may not adjudicate mixed petitions for *habeas corpus*, that is, petitions containing both exhausted and unexhausted claims." Rhines v. Weber, 544 U.S. 269, 273 (2005). Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." Jefferson v. Budge, 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing Rose v. Lundy, 455 U.S. 509, 518-22 (1982)).

As just discussed, petitioner's claims concerning Sergeant Powers and the CID have not been fully exhausted. Thus, he has presented a mixed petition containing both exhausted and unexhausted federal claims, which, also as just discussed, requires dismissal of the petition. Before doing so, however, the Court generally is required to provide petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." Id.; see also Rhines, 544 U.S. at 278; Tillema v. Long, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). This is not so, though, where the petitioner would be procedurally barred from returning to state court to address the unexhausted claims.

That being said, it does not appear that petitioner would be procedurally barred from returning to state court at this time. A *habeas corpus* claim is barred from federal review if the petitioner has failed to exhaust state remedies and the state's highest court would now find the claim to be procedurally barred. Coleman, 501 U.S. at 735 n.1. To give litigants "a fair opportunity to comply with known procedural rules, the controlling state procedural bar is the one in place at the time the claim should have been

raised." Calderon v. U.S. District Court for the Eastern District of California, 103 F.3d 72, 75 (9th Cir. 1996). Thus, "[o]nly if the bar is 'firmly established and regularly followed' at that time will it serve as an adequate ground to foreclose federal review." Id.

Since 1989, Washington has imposed a one-year period of limitation on litigants within which they may collaterally attack their conviction or sentence:

> No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction.

RCW 10.73.090(1). Although Washington state law also provides six statutory exceptions to the above time limit, none of those exceptions apply in this case. See RCW 10.73.100. Nevertheless, it appears that petitioner still has some time remaining within which to return to state court to exhaust the above claims. Petitioner's judgment and sentence became final in this case on February 25, 2008, the date on which the Washington State Court of Appeals issued its mandate. See RCW 10.73.090(3) (judgment becomes final on last of following dates: (a) date it is filed with clerk of trial court; (b) date an appellate court issues its mandate disposing of timely direct appeal; or (c) date United States Supreme Court denies timely petition for certiorari to review decision affirming conviction on appeal).

The Washington State Legislature also enacted in 1989 the following further limitation on filing a collateral attack on a conviction or sentence:

> If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition. . . . If upon review, the court of appeals finds that the petitioner has previously raised the same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition on its own motion without requiring the state to respond to the petition.

RCW 10.73.140. Under Washington law, the term "collateral attack" is "any form of postconviction relief other than a direct appeal." In re Becker, 143 Wn.2d 491, 496 (2001) ("collateral attack" includes personal restraint petitions and motions for new trial). Collateral attacks "cannot simply be a reiteration of issues finally resolved at trial and upon appellate review." Id. Rather, they "must raise new points of fact and law that were not or could not have been raised in the principal action." Id. Washington courts thus may not consider a personal restraint petition or other equivalent motion "if the movant has previously brought a collateral attack on the same or substantially similar grounds." Id.

ORDER
Page - 7

| | |
|---|---|
| 1 | Here, though, as noted above, the record fails to show petitioner previously has filed any collateral attack on his conviction or sentence. As such, neither this limitation nor the one-year statute of limitation previously discussed above would appear to prevent petitioner from returning to state court to exhaust the claims discussed herein, although given the date of the Washington State Court of Appeals mandate, the amount of remaining time petitioner would have under the latter limitation is not great. Nevertheless, the Court at this time cannot say those claims are procedurally barred at this time. |

Accordingly, the Court hereby orders petitioner by **no later than February 5, 2009**, to either (1) inform the Court in writing that he intends to return to state court to exhaust the claims discussed herein, or (2) file with the Court an amended petition under 28 U.S.C. § 2254, containing only those claims that have been fully exhausted in state court. Petitioner is warned, however, that should he choose to file an amended petition, it will operate as a *complete* substitute for his original petition, and the Court wi11 not consider that original petition. Petitioner further is warned that failure to timely or properly respond as directed herein will result in a recommendation that his petition be denied for failure to exhaust state court remedies.

Should petitioner submit an amended petition as directed herein, and the Court finds it acceptable and the claims contained therein fully exhausted, respondent will be granted the opportunity to file an answer thereto, and petitioner in turn shall be able to file a reply to that answer. Upon acceptance of the amended petition for filing, the Court shall issue an order setting forth deadlines for submitting the answer and reply, if any, and noting a new date for consideration of the amended petition.

The Clerk shall send a copy of this Order to petitioner and counsel for respondent.

DATED this 6th day of January 2009.

Karen L. Strombom
United States Magistrate Judge